# IN THE UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| INTERSTATE BAKERIES | ) | Case No. 04-45814 |
| CORPORATION, et al., | ) | |
| | ) | |
|     Debtor. | ) | |
| | ) | |
| US BANK NATIONAL ASSOCIATION, in | ) | |
| its capacity as Trustee of the IBC | ) | |
| CREDITOR'S TRUST, | ) | |
| | ) | Original Adversary Proceeding |
|     Plaintiffs | ) | No. 09-4191 |
| | ) | |
| v. | ) | Bifurcated Adversary Proceeding |
| | ) | No. 09-4205 |
| Petro Commercial Services Inc.; RND | ) | |
| Enterprises, LLC f/k/a RND Mechanical | ) | |
| Contractors, Inc.; Premium Food Sales Inc.; | ) | |
| Prime Industrial Recruiters, Inc.; Public Service | ) | |
| Electric and Gas Company d/b/a PSE&G, | ) | |
| | ) | |
|     Defendants. | ) | |

## **MEMORANDUM OPINION**

Plaintiff U.S. Bank, in its capacity as trustee ("Trustee") of the IBC Creditor's trust, seeks partial summary judgment in this action to avoid and recover $412,240.00 in allegedly preferential transfers ("Transfers") the Debtor made to Defendant Premium Food Sales, Inc. in the 90 days before the Debtor's bankruptcy petition date. Specifically, the Trustee seeks a determination as a matter of law that: 1) it has established all of the requirements under 11 U.S.C. § 547(b) for avoidance of the Transfers; 2) Premium has no defense to this action, with the exception of the § 547(c)(2) "Ordinary Course Defense" or the § 547(c)(4) "New Value Defense," which defenses the Trustee concedes will be determined at trial; and 3) the amount of any credit for new value Premium is ultimately able to claim will be calculated using the delivery dates and amounts set forth in the Trustee's motion.[1]

For the reasons stated below, the Court will grant the Trustee's motion in all regards.

---

[1] No further discussion of this issue is necessary, inasmuch as Premium admitted these facts.

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, discovery, and any affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.[2] In a motion for summary judgment, the moving party has the initial burden of demonstrating the absence of genuine issues of material fact.[3] Once the moving party has met this initial burden of proof, the non-moving party must set forth specific facts sufficient to raise a genuine issue for trial and may not rest on its pleadings or mere assertions of disputed facts to defeat the motion.[4]

## BACKGROUND

1. In the 90 days before the Debtor filed its Chapter 11 bankruptcy petition (June 24, 2004 to September 22, 2004 – the "Preference Period"), the Debtor made, and Premium deposited, the following fourteen payments ("Payments") totaling $412,240.00:

| Invoice No. | Invoice Date | Ship Date | Due Date | Amount | Check Date | Check No. | Deposit Date | Days to Pay - chk date | Days to Pay - deposit date |
|---|---|---|---|---|---|---|---|---|---|
| 4303 | 5/26/2004 | 5/26/2004 | 6/10/2004 | $13,440.00 | 7/14/2004 | 1021505 | 7/21/2004 | 49 | 56 |
| 4301 | 5/26/2004 | 5/26/2004 | 6/10/2004 | $37,024.00 | 7/13/2004 | 1019988 | 7/27/2004 | 48 | 62 |
| 4304 | 6/10/2004 | 6/10/2004 | 6/25/2004 | $37,024.00 | 7/22/2004 | 1031946 | 8/5/2004 | 42 | 56 |
| 4307 | 6/11/2004 | 6/11/2004 | 6/26/2004 | $22,784.00 | 7/23/2004 | 1033129 | 8/5/2004 | 42 | 55 |
| 4316 | 7/9/2004 | 7/9/2004 | 7/24/2004 | $37,024.00 | 7/23/2004 | 1033129 | 8/5/2004 | 14 | 27 |
| 4309 | 6/22/2004 | 6/17/2004 | 7/7/2004 | $37,024.00 | 8/3/2004 | 1047505 | 8/16/2004 | 42 | 55 |
| 4320 | 7/22/2004 | 7/22/2004 | 8/6/2004 | $5,152.00 | 8/6/2004 | 1054604 | 8/17/2004 | 15 | 26 |
| 4311 | 6/30/2004 | 6/30/2004 | 7/15/2004 | $12,672.00 | 8/11/2004 | 1060185 | 8/18/2004 | 42 | 49 |
| 4315 | 7/9/2004 | 7/9/2004 | 7/24/2004 | $5,152.00 | 8/11/2004 | 1060185 | 8/18/2004 | 33 | 40 |
| 4314 | 7/7/2004 | 7/7/2004 | 7/22/2004 | $37,024.00 | 8/18/2004 | 1069508 | 8/24/2004 | 42 | 48 |
| 4321 | 7/26/2004 | 7/26/2004 | 8/10/2004 | $37,024.00 | 8/12/2004 | 1062327 | 8/25/2004 | 17 | 30 |
| 4323 | 7/30/2004 | 7/30/2004 | 8/14/2004 | $17,584.00 | 8/17/2004 | 1067287 | 8/25/2004 | 18 | 26 |
| 4322 | 8/5/2004 | 8/5/2004 | 8/20/2004 | $11,392.00 | 8/20/2004 | 1073675 | 8/30/2004 | 15 | 25 |
| 4317 | 7/14/2004 | 7/14/2004 | 7/29/2004 | $37,024.00 | 8/25/2004 | 1079752 | 9/7/2004 | 42 | 55 |
| 4328 | 8/12/2004 | 8/12/2004 | 8/27/2004 | $32,656.00 | 8/27/2004 | 1083908 | 9/7/2004 | 15 | 26 |
| 4327 | 8/13/2004 | 8/13/2004 | 8/28/2004 | $32,240.00 | 8/31/2004 | 1088506 | 9/7/2004 | 18 | 25 |

2. The Debtor indicated on check "vouchers" which invoice(s) it intended to pay with each check.

---

[2] Fed. R. Bankr. P. 7056.
[3] *See id.*; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552 (1986).
[4] *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986).

3. The date Premium shipped goods to the Debtor was in all but one instance the same as the invoice date; the invoice for the June 16, 2004 shipment was issued six days later, on June 22, 2004.

4. The invoices all noted that the terms were "Net 15."

5. Premium is the holder of a general, unsecured claim against the Debtor and therefore is a beneficiary of the IBC Creditor's Trust.

6. Each trust beneficiary, including Premium, will receive less than 100 percent distribution on its unsecured claim.

7. The following list summarizes the invoices Premium issued and the corresponding shipments to the Debtor in the Preference Period.

| INVOICE | INVOICE DATE | SHIP DATE | AMOUNT |
|---|---|---|---|
| 4311 | 06/30/04 | 06/30/04 | $12,672 |
| 4314 | 07/07/04 | 07/07/04 | $37,024 |
| 4315 | 07/09/04 | 07/09/04 | $5,152 |
| 4316 | 07/09/04 | 07/09/04 | $37,024 |
| 4317 | 07/14/04 | 07/14/04 | $37,024 |
| 4320 | 07/22/04 | 07/22/04 | $5,152 |
| 4321 | 07/30/04 | 07/30/04 | $37,024 |
| 4323 | 08/05/04 | 08/05/04 | $17,584 |
| 4322 | 08/12/04 | 08/12/04 | $11,392 |
| 4328 | 08/13/04 | 08/13/04 | $32,656 |
| 4327 | 08/25/04 | 08/25/04 | $32,240 |
| 4331 | 08/26/04 | 08/26/04 | $5,152 |
| 4333 | 08/26/04 | 08/26/04 | $32,656 |
| 4334 | 08/27/04 | 08/27/04 | $32,240 |

8. Premium did not provide any other goods or services to the Debtor in the Preference Period.

## DISCUSSION

**A.   The uncontroverted facts warrant summary judgment on all of the § 547(b) elements.**

To avoid a transfer as a preference, a trustee or debtor-in-possession must establish every element of 11 U.S.C. § 547(b),[5] which provides:

> (b) Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property-
>   (1) to or for the benefit of a creditor;
>   (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>   (3) made while the debtor was insolvent;
>   (4) made—
>     (A) on or within 90 days before the date of the filing of the petition; or
>     (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>   (5) that enables such creditor to receive more than such creditor would receive if—
>     (A) the case were a case under chapter 7 of this title;
>     (B) the transfer had not been made; and
>     (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

The Trustee has established all of these elements as a matter of law. Premium admits that the Transfers were made while the Debtor was insolvent (§547(b)(3)), and Premium's challenges to the other elements are insufficient to preclude summary judgment.

**1.  Sections 547(b)(1) and (2) – The Transfers were made on account of antecedent debts owed to Premium.**

Premium's only argument with regard to these elements is that the Transfers were not on account of antecedent debts because they were intended to be contemporaneous exchanges for new value. This argument confuses the antecedent debt requirement with the "contemporaneous exchange" defense in § 547(c)(1) and fails to grasp the essence of what constitutes an "antecedent debt" for purposes of § 547(b)(2).

Under Eighth Circuit precedent, "a debt is 'antecedent' if it was incurred before the allegedly preferential transfer."[6] And the Bankruptcy Code defines a "debt" as a liability on a

---

[5] 11 U.S.C. § 547(g).
[6] *In re Jones Truck Lines, Inc.*, 130 F.3d 323, 329 (8th Cir. 1997).

4

claim.[7] Thus, the concept of a debt and a claim are coextensive under the Code, and a debtor incurs a debt for purposes of § 547(b)(2) when a creditor's claim against the debtor first accrues.[8] A creditor's claim for goods supplied to a debtor accrues upon delivery of the goods, not when the creditor chooses to invoice.[9]

Here, the goods Premium supplied (bulk loads of honey) were all delivered prior the Debtor's payments for those goods. Consequently, those Payments were all on account of antecedent debts. This is true regardless of whether these transactions were intended as contemporaneous exchanges or standard payments on account; Premium's claims against the Debtor accrued the moment the goods were delivered, and any subsequent payment for those goods would have been on account of an antecedent debt.

### 2. Section 547(b)(4) – The Transfers were all made in the Preference Period.

For purposes of § 547(b)(4) a transfer by check occurs when the check clears a debtor's bank account.[10] The Trustee maintains that the checks cleared in the Preference Period based on the information in the Debtor's accounting system. In support, the Trustee has offered the affidavit of Brad Daniel, a director at BMC Group (an entity hired to assist the Trustee in the administration of the IBC Creditor's Trust). According to his affidavit, Mr. Daniel personally oversaw the retrieval of the accounting data from the Debtor's accounting system and that data indicates that the disputed checks cleared the Debtor's account in the Preference Period.

Premium, on the other hand, has offered <u>nothing</u> to substantiate its challenge to the disputed checks nor has it argued that the checks cleared on a date other than what the Trustee asserts. Its sole argument is that Mr. Daniel's affidavit should be stricken because "there has been no showing of a hearsay exception" and that Mr. Daniel is not competent to testify about "the matters stated therein."

Without greater specificity, it is difficult to address Premium's objections. The Court presumes that Premium interprets Mr. Daniel's affidavit as being offered to directly prove that

---

[7] 11 U.S.C. § 101(12).
[8] *See In re Bridge Information Systems, Inc.*, 474 F.3d 1063, 1067 (8th Cir. 2007) (citing *In re Bridge Info. Sys., Inc.*, 302 B.R. 41, 45-46 (Bankr. E.D. Mo. 2003)); *See also In re Vanguard Airlines, Inc.*, 295 B.R. 329, 334 (Bankr. W.D. Mo. 2003).
[9] *See In re Bridge Information Systems, Inc.*, 474 F.3d at 1067.
[10] *See In re American Eagle Coatings, Inc.*, 353 B.R. 656, 671 (Bankr. W.D. Mo. 2006).

the disputed checks cleared the bank account in the Preference Period, but that isn't the purpose for which it was offered. As the Trustee argues in its response, Mr. Daniel's affidavit was offered to establish that the information retrieved from the Debtor's accounting system under his supervision shows that the disputed checks cleared in the Preference Period. Mr. Daniel is competent to testify to that fact.

In the absence of any evidence or specific assertion that the disputed checks cleared on a different date and in consideration that the clear dates stamped on the checks are illegible, the Court accepts the information in the Debtor's accounting system as sufficient proof that all of the Transfers occurred within the Preference Period. Section 547(b)(4) is satisfied.

### 3. Section 547(c)(5) – The Transfers enabled Premium to receive more than it would in a Chapter 7 liquidation.

Premium has not offered any argument or evidence to counter the Trustee's evidence that none of the general unsecured creditors of the estate will receive 100% payment of its claims and that, therefore, Premium received more that it would have in a Chapter 7 liquidation. Consequently, the Court finds that the Trustee has established this element as a matter of law.

In sum, the Court finds that the Trustee has established as a matter of law all of the elements of 11 U.S.C. § 547(b), and the Transfers are, therefore, avoidable as preferences under § 547(b), except to the extent Premium successfully establishes at trial a defense under § 547(c)(2) or (4). (As discussed immediately below, Premium cannot prevail under § 547(c)(1)).

### B.    The uncontroverted facts establish that the Transfers cannot be shielded from avoidance under § 547(c)(1) as contemporaneous exchanges for new value.

To shield a transfer from avoidance under § 547(c)(1), a defendant must show that an otherwise preferential transfer was "(A) intended by the debtor and the creditor ... to be a contemporaneous exchange for new value given to the debtor; and (B) in fact a substantially contemporaneous exchange."[11]  Generally, a defendant has the burden of proving the elements of § 547(c)(1);[12] however, because the Trustee is seeking summary judgment on this issue, it bears

---

[11] 11 U.S.C. § 547(c)(1)(A) and (B).
[12] *See In re Jones Truck Lines, Inc.*, 83 F.3d at 259.

6

the burden of establishing that Premium cannot, as a matter of law, prevail under § 547(c)(1). The Trustee has met this burden.

In support of its motion on this issue, the Trustee points to the 25- to 62-day lapse between the invoice dates and the check clear dates and to the fact that the invoices state that the terms were "Net 15" as proof that the parties didn't intend the Transfers to be contemporaneous exchanges for new value and that the exchanges were not, in fact, substantially contemporaneous. Premium argues in response that the parties did intend contemporaneous exchanges for new value and that if check issuance dates – not clear dates – are used to calculate the time between invoices and payment, the exchanges were substantially contemporaneous.

Neither of Premium's arguments has merit. First, Premium has not offered a shred of evidence – only argument – to show that the parties intended a contemporaneous exchange for new value. And, as noted above, once a moving party has met its initial burden of proof – which the Trustee has – Premium, as the non-moving party, had the burden of setting forth specific facts sufficient to raise a genuine issue for trial and cannot rest on mere assertions of disputed fact to defeat the motion.[13]

Second, the lapse of time between invoice dates and check issuance dates is no more indicative of a contemporaneous exchange, with regard to intent or timing, than the delay between invoice dates and the dates the checks cleared. To the contrary, even if check issuance dates are used, the delay between invoice and payment still ranged between 10 and 49 days, with an average delay of 31 days. A 31-day lapse between invoice and payment is not substantially contemporaneous under these circumstances. Therefore, the Trustee is entitled to summary judgment on this issue.

## CONCLUSION

For the reasons stated above, the Court will grant Plaintiff U.S. Bank's motion for partial summary judgment in all respects. The uncontroverted facts establish judgment as a matter of law that: 1) the Transfers are avoidable under 11 U.S.C. § 547(b); 2) Premium cannot shield the Transfers from avoidance under § 547(c)(1); 3) Premium's ability to shield the Transfers from avoidance under § 547(c)(2) and (c)(4) will be determined at the trial currently scheduled for

---

[13] *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986).

April 10, 2013; and 4) any credit for new value will be calculated using the delivery dates and amounts set forth in numbered paragraph 7 hereinabove.

**SO ORDERED** this 19th day of December 2012.

/s/ Jerry W. Venters
HONORABLE JERRY W. VENTERS
UNITED STATES BANKRUPTCY JUDGE

A copy of the foregoing was mailed conventionally
or electronically to the counsel of record.