**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| **IN RE INTERSTATE BAKERIES** | ) |
| **CORPORATION, et al.,** | ) **Case No. 04-45814** |
|    **Debtors.** | ) **(jointly administered)** |
| ——————————————————— | ) |
| | ) |
| **US BANK NATIONAL ASSOCIATION,  in** | ) |
| **its capacity as Trustee of the IBC CREDITOR's** | ) |
| **TRUST,** | ) |
|    **Plaintiffs,** | ) |
| | ) **Original Adv. No. 06-04191** |
| **v.** | ) **Bifurcated Adv. No. 09-04205** |
| | ) |
| **PETRO COMMERCIAL SERVICES, INC.,** | ) |
|    **Defendants.** | ) |
| ——————————————————— | ) |

**<u>MEMORANDUM OPINION</u>**

Defendant Premium Food Sales, Inc. ("Defendant" or "Premium") moves the Court for

partial summary judgment with respect to its ordinary course and new value defenses raised in

response to the preference complaint of U.S. Bank National Association as Trustee of the IBC

Creditor's Trust ("Plaintiff" or "Trustee"). For the reasons set forth below, Premium has not

established as a matter of law its entitlement to judgment, and therefore its Motion will be

denied.

***Procedural Background***

The procedural background with respect to the Chapter 11 filing of Interstate Bakeries

Corporation and related debtors (collectively, the "Debtor" or "IBC"), the creation of the IBC

Creditor's Trust, and the filing of the Trustee's original and bifurcated adversary proceedings to

recover alleged preferential transfers against various defendants is set forth in a related matter,

1

*U.S Bank National Association v. SMF Energy Corporation (In re Interstate Bakeries Corp.),* 460 B.R. 222 (8th Cir. B.A.P. 2011) and need not be repeated here.

For purposes of this adversary proceeding, the Court notes that the Trustee filed its bifurcated complaint against six unrelated defendants on September 14, 2009. The Trustee has dismissed or taken judgment against the other five defendants, and the only claims left to be determined relate to Premium. In addition, this Court in an opinion dated December 19, 2012 (the "Memorandum Opinion"), by the Hon. Jerry W. Venters, now retired, granted the Trustee's motion for partial summary judgment against Premium (the "Trustee's Motion"), finding that (1) the Trustee had established as a matter of law that the transfers at issue constitute avoidable transfers within the meaning of 11 U.S.C. § 547(b); (2) Premium's only defenses arise under either § 547(c)(2) (the "Ordinary Course Defense") or § 547(c)(4) (the "New Value Defense") which the Trustee had conceded needed to be determined at trial; and (3) the amount of any credit for new value which Premium may be able to claim will be calculated using the delivery dates and amounts set forth in the Trustee's Motion.

Pursuant to a scheduling order entered January 24, 2013, the Court scheduled a trial of this matter for April 10, 2013, and ordered that any dispositive motions be filed on or before March 1, 2013. Premium sought and received a one week extension or until March 8, 2013, to file its motion; Premium's Motion was filed on March 9, 2013. In the absence of the Trustee's filing or raising of any objection as to timeliness of the Motion, and finding no prejudice to the Trustee, the Court on its own motion and in the interests of justice grants Premium a one day extension out of time to file its Motion, such that Premium's Motion shall be deemed timely filed.

The Court, having reviewed Premium's Motion, the Trustee's Memorandum in Opposition filed April 1, 2013, and Premium's Reply, filed April 5, 2013, rules as follows:

### *Standard of Review*

The parties are in agreement with the relevant standard of review, and the Court having previously set forth the standard of review in its Memorandum Opinion, incorporates the standard of review by reference such that it need not be repeated here.

### *Discussion*

**Ordinary Course Defense**

The Ordinary Course Defense is set out in 11 U.S.C. § 547(c)(2). Both parties agree that because the Debtor filed bankruptcy prior to the effective date of the BAPCPA amendments to § 547(c)(2), the pre-BAPCPA version governs here.[1]

To mount a successful ordinary course defense, Premium must establish, by a preponderance of the evidence, the three elements of § 547(c)(2): that the transfer was --

    (A)    in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

    (B)    made in the ordinary course of business or financial affairs of the debtor and the transferee; and

---

[1] The Bankruptcy Abuse Prevention and Consumer Protection Act, 109 P.L. 8, is affectionately known to practitioners as "BAPCPA." Section 1501(b) of BAPCPA states, generally, that amendments to the Act shall not apply with respect to cases commenced under title 11 before the effective date of the Act, October 17, 2005 (180 days after enactment). The effect of the amendment is significant, as it removes the so-called "objective test," discussed *infra*, and thus makes it easier for defendants to establish an ordinary course defense. As the Trustee points out in its response, Judge Venters had also ruled in related IBC matters that because the Debtor filed its case in 2004, BAPCPA does not apply, notwithstanding that adversary proceedings such as this one were filed after BAPCPA's effective date. *In re Interstate Bakeries Corp*., 2011 WL 96815, n. 9 (Bankr. W.D. Mo. Jan. 12, 2011) (unpublished). Given that the parties are in agreement, the Court sees no reason to reconsider Judge Venters' ruling on this issue.

(C)      made according to ordinary business terms.

The Trustee in its Response has conceded that Premium establishes the first element --
that the debt was incurred in the ordinary course of Premium and the Debtor's business or
financial affairs. And, in its Reply, Premium now concedes that it did not put forth evidence
supporting the third element, the so-called objective test.[2]  Therefore, the only issue for the Court
to determine with respect to the ordinary course defense is whether Premium is entitled to partial
summary judgment on the second element, the so-called "subjective test."

With respect to the second element, the Eighth Circuit offers this Court guidance:
"'[T]here is no precise legal test which can be applied' in determining whether payments by the
debtor during the 90-day period were 'made in the ordinary course of business'; rather, th[e]
court must engage in a 'peculiarly factual analysis.'" *In re Lovett*, 931 F.2d. 494, 497 (8th Cir.
1991) (cites omitted). "The cornerstone of this element of a preference defense is that the
creditor needs to demonstrate *some consistency* with other business transactions between the
debtor and the creditor." *Id.* (emphasis added).

Thus, for example, in *Lovett*, the Court compared the length of time from invoice to
payment in the 90-day period to the same during the 12 month period preceding the preference
period. Noting the average age of payment was 62 days in the 12 month period, and 52 days in
the preference period, the Eighth Circuit found that this difference "was not sufficiently
significant to show that the payments during the preference period did not reflect the ordinary

---

[2] The parties dispute whether, under the objective test, it is the debtor's industry or the creditor's
industry that should be considered. The Court views that it is bound by *In re U.S.A Inns of
Eureka Springs, Arkansas, Inc.*, 9 F.3d 680 (8th Cir. 1993), which, without stating so overtly,
clearly considered it was the creditor's industry that should be considered, holding that testimony
that, where the debtor was in real estate, and the creditor was in the savings and loan industry,
that that creditor's practice, consistent in the savings and loan industry, of working with
delinquent customers, was a common industry practice and therefore, objectively ordinary
course.

4

course of business reflected in the prior 12 months." *Id*. at 498.  The Court observed that this was

a case "where the parties to the contract adopt[ed] at extra-contractual practice that [became] the

ordinary course of business between them." *Id*. at 499.  The Court reversed the bankruptcy and

district courts, holding their findings of no ordinary course to be clearly erroneous. *Id.* at 500.

*In re Gateway Pacific Corp*., 214 B.R. 870 (8th Cir. BAP. 1997), *affirmed* 153 F.3d 915

(8th Cir. 1998), stands in contrast. In *Gateway*, the median time between the invoice and

payment dates was 35 days during the pre-preference period, and had increased to 54 days during

the preference period. *Id.* at 875. The *Gateway* Court thus agreed with the lower courts that the

increase in delayed payments established that such payments were not in the ordinary course of

the debtor and creditor under the subjective test. *Id*. at 876.

In this case, the Trustee has admitted the majority of Premium's statements of

uncontroverted, material facts. ¶¶ 1 – 13.  As the Trustee notes, however, these facts all relate to

payments during the preference period. Premium does not set forth any statements of

uncontroverted fact related to the pre-preference period. Although Premium incorporates by

reference an Affidavit by Mr. Couture that discusses the pre-preference period transactions

between the Debtor and Premium, Premium's motion does not set forth any separate statements

of facts[3] that would allow the Court to determine, as a matter of law, that there is "some

consistency" between Debtor's payments to Premium during the pre-preference period compared

to the preference period.

Even if Premium had set forth separate statements of fact regarding the pre-preference

period in its Motion, the Court would nonetheless be compelled to deny the motion for summary

judgment. The Trustee offers calculations showing that payments during the preference period

---

[3]  Local Rule 9013-1.H

were on average 10 days later than those made during the pre-preference period. The Court is constrained on summary judgment to view the facts and allegations in the light most favorable to the opposing party, the Trustee. Given the dispute in the payment discrepancy, and ambiguous testimony regarding collection activity,[4] the Court concludes there is a factual dispute regarding whether the payments IBC made to Premium were within the ordinary course of the Debtor's and Premium's business within the meaning of § 547(c)(2)(B). Since Premium has not met its burden of establishing ordinary course as a matter of law, its motion for partial summary judgment on this issue should be denied.

**New Value Defense**

In the alternative to its ordinary course of business defense, Premium asks this Court to grant summary judgment in its favor under the new value defense. 11 U.S.C. § 547(c)(4). Under this defense, a trustee may not avoid a preferential transfer made by the debtor to a transferee in exchange for unsecured new value to the extent that the transfer remains unpaid. *In re Accessair, Inc.*, 314 B.R. 386, 395 (8th Cir. B.A.P. 2004). Specifically, Premium must show that after receiving the transfer, it provided new value to the debtor and the debtor did not compensate the creditor with an "otherwise unavoidable transfer." 11 U.S.C. § 547(c)(4); *Accessair*, 314 B.R. at 395. The burden of proof lies with the transferee.  *Id.*

Neither party disputes that Premium supplied honey to the Debtor on an unsecured basis, nor disputes the amounts of honey that Premium supplied. Premium has not offered evidence, however, that it made a subsequent advance after it was paid. As stated in *In re Armstrong*, 291 F.3d 517, 526 (8th Cir. 2001), the "new value" must have replenished the estate. Although it is unclear based on Premium's argument, it appears Premium assumes that all shipments it made

---

[4]     *See, e.g., In re Spirit Holding Co., Inc.*, 214 B.R. 891, 898 (E.D. Mo. 1997) (payments made in response to unusual debt collection practice are not ordinary course).

during the preference period qualify as new value. That is not true as a matter of law if Premium,

in turn, received payment for each shipment and made no subsequent advance. See *Accessair,*

314 B.R. at 395 (elements of new value, citing *In re Kroh Bros.,* 930 F.2d 648, 652 (8th Cir.

1991)).

In sum, there remains a material question of fact as to whether the transfers in question

are otherwise avoidable under the new value defense of  § 547(c)(4).

### Conclusion

Premium's summary judgment motion is denied.

**SO ORDERED** this 8th day of April 2013.

/s/  Cynthia A. Norton
HONORABLE CYNTHIA A. NORTON
UNITED STATES BANKRUPTCY JUDGE

A copy of the foregoing was mailed conventionally
or electronically to the counsel of record.