**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Chapter 11 |
| INTERSTATE BAKERIES | ) | Case No. 04-45814 |
| CORPORATION, et al., | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |
| | ) | |
| PREMIUM FOOD SALES, INC., et al., | ) | |
| | ) | Original Adversary No. 06-4191 |
| Appellants, | ) | |
| v. | ) | Adversary No. 09-04205 |
| | ) | |
| US BANK NATIONAL ASSOCIATION, | ) | |
| in its capacity as Trustee of the IBC | ) | |
| CREDITORS TRUST, | ) | Civil Case No. 4:13-CV-00659-BCW |
| | ) | |
| Appellee. | ) | |

**ORDER**

Before the Court is a bankruptcy appeal filed by Premium Food Sales, Inc. ("Premium Foods") pursuant to 28 U.S.C. § 158(a) and Fed. R. Bankr. P. 8001. Premium Foods appeals the Bankruptcy Court's[1] Memorandum Opinion and Order entered on June 17, 2013 in the matter captioned U.S. Bank National Association v. Premium Food Sales, Incorporated, Adversary No. 09-04205. The District Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(a)(1). The Court being duly advised of the premises, for good cause shown, and for the following reasons, affirms the Bankruptcy Court's ruling.

**BACKGROUND**

Premium Foods sells honey to manufacturers in the wholesale food industry. It supplied honey to bakeries owned by Interstate Bakeries Corp. and seven of its subsidiaries and affiliates

---

[1] The Honorable Cynthia A. Norton, United States Bankruptcy Judge for the Western District of Missouri.

- 1 -

("Debtor").  On September 22, 2004, Debtor filed a voluntary petition for bankruptcy reorganization pursuant to Chapter 11 of Title 11 of the Bankruptcy Code.[2]  During the ninety days prior to filing its bankruptcy petition (the "90-day preference period"), Debtor made fourteen payments to Premium Foods totaling $412,240.00.  U.S. Bank, N.A., as the Trustee of Debtor's creditors' trust ("Trustee"), sought to recover, also known as avoid, certain "preferential transfers" made to Premium Foods, pursuant to 11 U.S.C. § 547(b).  Specifically, the Trustee sought to avoid the fourteen payments made during the 90-day preference period, from June 24, 2004 to September 22, 2004.

Premium Foods and the Trustee filed separate motions for partial summary judgment.  The Bankruptcy Court determined the fourteen payments were preferential transfers, and Premium Foods alleged the affirmative defenses of ordinary course of business and new value under 11 U.S.C. §§ 547(c)(2) and 547(c)(4), respectively.  The Bankruptcy Court then held a trial on April 10, 2013 to determine Premium Foods' affirmative defenses.  Two witnesses testified: (1) Premium Foods' principal, Donald Couture; and (2) the Trustee's consultant, W. Terrence Brown.  Evidence was presented about when honey was shipped, when invoices were sent, and when payments were delivered and deposited.  The ultimate issue at trial was how the payment process differed during and before the 90-day preference period.

Couture testified about the history of dealings between the parties, but he did not testify about honey production industry standards.  The business relationship between Premium Foods and Debtor began in 2003 and continued through the point Debtor filed for bankruptcy.  Ordinarily, the honey's shipment date was the same as the invoice date.  However, the shipment

---

[2] The procedural background regarding Debtor's Chapter 11 bankruptcy petition, the creation of the creditors' trust, and the filing of the Trustee's original and bifurcated adversary proceedings is set forth in a related matter, U.S. Bank National Association v. SMF Energy Corporation (In re Interstate Bakeries Corporation), 460 B.R. 222 (B.A.P. 8th Cir. 2011), and it need not be repeated here.

date on the alleged preferential transfers was June 16, 2004 and the invoices' dates were June 22, 2004. Couture testified that the billing method only changed at the end of the relationship between Debtor and Premium Foods and that nothing changed during the 90-day preference period. Before and during trial, Premium Foods and the Trustee submitted separate charts to the Bankruptcy Court to illustrate the timing of when honey was shipped, invoices sent, and payments delivered and deposited. The Bankruptcy Court rejected Premium Foods' chart, accepted the Trustee's chart, and found Premium Foods was entitled to a credit offset of $177,360.00, based upon the new value defense.

Premium Foods appeals the Bankruptcy Court's ruling, arguing it erred by: (1) finding the date stated on the check was the date of delivery of payment for determination of the preference payment calculation under the subjective prong of 11 U.S.C. § 547(c)(2)(B); (2) finding Premium Foods failed to present competent evidence of industry standards under the objective prong of the ordinary course of business defense under 11 U.S.C. § 547(c)(2)(B); (3) calculating the new value defense credits applied against the preference payments under 11 U.S.C. § 547; and (4) prohibiting Couture from testifying about ordinary course industry standards within the wholesale bulk honey industry.

## DISCUSSION

### I.   STANDARD OF REVIEW

In considering these issues, the Court reviews the Bankruptcy Court's findings of fact for clear error and its conclusions of law de novo. FED. R. BANKR. P. 8013; Leanord v. Exec. Risk Indem., Inc. (In re SRC Holding Corp.), 545 F.3d 661, 666 (8th Cir. 2008) (citation omitted). "[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been

committed." Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985) (citation omitted). Under the clearly erroneous standard, the Court must have a "definite and firm conviction that a mistake has been committed" before overturning a finding of fact supported by the evidence in the record. Willis v. Henderson, 262 F.3d 801, 808 (8th Cir. 2001) (citing Anderson, 470 U.S. at 573). The Court also reviews the Bankruptcy Court's order granting a summary judgment motion de novo. In re SRC Holding Corp., 545 F.3d at 666 (citation omitted).

## II. ORDINARY COURSE OF BUSINESS DEFENSE

A trustee may not avoid a transfer if it was made in the ordinary course of business, and it is Premium Foods' burden to prove this defense. 11 U.S.C. §§ 547(c)(2) and 547(g); see Shodeen v. Airline Software, Inc. (In re Accessair, Inc.), 314 B.R. 386, 392 (B.A.P. 8th Cir. 2004) (citations omitted). Premium Foods must prove by a preponderance of the evidence that the transfer was: (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee; (B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and (C) made according to ordinary business terms. Harrah's Tunica Corp. v. Meeks (In re Armstrong), 291 F.3d 517, 526-27 (8th Cir. 2002). 11 U.S.C. § 547(c)(2)(B) is a subjective element of the defense, and 11 U.S.C. § 547(c)(2)(C) is an objective element.

### a. Date of Initial Preference Payment Calculation

At issue is the delivery date of payment for four checks during the 90-day preference period.[3] Premium Foods argues the Bankruptcy Court erred in using the date stated on the checks as the delivery date of payment for determining the preference payment calculation under 11 U.S.C. § 547(c)(2)(B), the subjective element. In particular, Premium Foods argues the

---

[3] Premium Foods admitted that ten of the fourteen checks were received, deposited, and cleared during the 90-day preference period. Thus, only the remaining four checks are at issue on appeal.

- 4 -

Bankruptcy Court relied upon inadmissible hearsay evidence to determine the delivery date of payment.

In the Trustee's motion for partial summary judgment, it presented an affidavit from Brad Daniel to the Bankruptcy Court. Daniel declared when the checks cleared at the bank, and a preferential transfer does not occur until the debtor's bank honors the check. Barnhill v. Johnson, 503 U.S. 393 (1992). In opposing the Trustee's motion for partial summary judgment, Premium Foods argued the deposit dates on the four checks were ineligible and, thus, posed a genuine dispute of material fact barring summary judgment. Premium Foods now argues Daniel lacked personal knowledge regarding Debtor's accounting system and, thus, his affidavit on the issue constituted inadmissible hearsay. Both of Premium Foods' arguments fail.

Daniel's affidavit stated he "personally oversaw the data retrieval process" and learned the four checks cleared at the bank on July 26, August 20, September 2, and September 14 in 2004. In Premium Foods' opposition to the Trustee's motion for partial summary judgment, and here again, Premium Foods has not provided any fact to dispute Daniel's affidavit, only mere conjecture. In order to raise a genuine dispute of material fact, Premium Foods was required to set forth specific facts to put the delivery date of payment for the four checks in dispute. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

Notwithstanding whether Daniel's affidavit constitutes inadmissible hearsay evidence, Premium Foods conceded in its own motion for summary judgment that the four checks cleared the bank during the 90-day preference period. "Statements contained in a party's pleadings are binding on that party, and are considered judicial admissions, unless the statements are withdrawn or amended." E. States Life Ins. Co. v. Strauss (In re Crawford), 274 B.R. 798, 804-05 (B.A.P. 8th Cir. 2002) (citations omitted). Therefore, the Bankruptcy Court properly

determined the delivery date of payment for calculating the preference payment for all fourteen checks within the 90-day preference period.

### b. Evidence of Objective Industry Standards

Premium Foods contends the Bankruptcy Court erred in finding Premium Foods failed to present competent evidence of objective industry standards under 11 U.S.C. § 547(c)(2)(C), the objective element. Specifically, Premium Foods argues that employees of a transferee can testify about whether transfers were made according to ordinary business terms and that Couture provided sufficient testimony about payment terms in the limited wholesale industrial honey supply market.

The Bankruptcy Court found Couture's testimony on this issue "while credible, was not based on personal knowledge of any businesses other than his own, and was not based on knowledge of the industry at the time of the Transactions." The Bankruptcy Court also found Couture did not offer any "specific payment terms, aging of invoices, or collection practices from competitors, or the industry as a whole." Additionally, the Bankruptcy Court found "Couture did not testify based on any personal knowledge, experience or training as either an expert or lay witness of similarly situated members of the honey brokering business with respect to what the standard for ordinary business payment terms were at the time of the payments at issue." The Court does not have a definite and firm conviction the Bankruptcy Court committed a mistake in determining the invoices and payments were not made according to ordinary business terms. Therefore, the Court finds the Bankruptcy Court did not clearly err on this issue.

After a de novo review of the evidence, the Court finds Premium Foods failed to present competent evidence of objective industry standards under 11 U.S.C. § 547(c)(2)(C). In order to prove objective industry standards, Premium Foods had to establish "a prevailing practice among

similarly situated members of the industry facing the same or similar problems." Jones v. United Sav. & Loan Ass'n (In re U.S.A. Inns of Eureka Springs, Ark., Inc.), 9 F.3d 680, 685 (8th Cir. 1993). Despite Couture's testimony about his education, background, and experience in the honey supply industry, Couture did not testify about other honey brokers' dealings with customers, payment terms with similarly situated companies in the industry, or prevailing practices within the industry. Since Premium Foods did not present any other objective evidence on this issue at trial, Premium Foods failed to satisfy its burden of proof under 11 U.S.C. § 547(c)(2)(C).

### c. Limiting Couture's Testimony on Objective Industry Standards

Premium Foods also argues the Bankruptcy Court erred in prohibiting Couture from testifying about objective industry standards under 11 U.S.C. § 547(c)(2)(C). When Couture attempted to testify at trial about whether the payments at issue were made in the ordinary course of business, the Bankruptcy Court sustained the Trustee's objections. Evidentiary rulings are reviewed for an abuse of discretion. DeBold v. Case (In re Tri-River Trading, LLC), 329 B.R. 252, 263 (B.A.P. 8th Cir. 2005) (citations omitted). "An abuse of discretion occurs when the reviewing court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." Id. (citations omitted).

A transferee's employee may testify about the industry standards in order to prove the objective element of 11 U.S.C. § 547(c)(2)(C). In re Accessair, Inc., 314 B.R. at 394. However, evidence based only upon subjective experience will not satisfy the objective burden by itself. Id. at 395 (citations omitted); see also Cent. Hardware Co. v. Walker-Williams Lumber Co. (In re Spirit Holding Co.), 214 B.R. 891, 901 (E.D. Mo. 1997). The employee must have personal

knowledge of the prevailing industry standards outside of his/her current employment in the industry, or at least have knowledge gained from industry-related seminars or workshops. In re Spirit Holding Co., 214 B.R. at 901.

Couture's sole source of knowledge about the wholesale bulk honey industry's standards came from his experiences with Premium Foods. Premium Foods failed to lay a proper foundation to show Couture's testimony was based on any experience in the baking or honey supply industries outside his current employment. As discussed above, Couture did not testify about his knowledge about Premium Foods' competitors' practices. The Court does not have a definite and firm conviction that the Bankruptcy Court made a clear error of judgment or exceeded the bounds of permissible choice under the circumstances. Therefore, the Court finds the Bankruptcy Court did not abuse its discretion in limiting Couture's testimony about objective industry standards.

### III. NEW VALUE DEFENSE

A trustee may not avoid a transfer if it was made by the debtor to a transferee in exchange for unsecured new value that remained unpaid (or on account of which new value the debtor did not make an otherwise unavoidable transfer), and it is Premium Foods' burden to prove this defense. 11 U.S.C. § 547(c)(4); In re Accessair, Inc., 314 B.R. at 392 (citations omitted). Premium Foods must prove by a preponderance of the evidence that: (A) the creditor received a transfer that is otherwise avoidable as a preference under § 547(b); (B) after receiving the preferential transfer, the creditor advanced new value to the debtor on an unsecured basis; and (C) the debtor did not fully compensate the creditor for the new value as of the bankruptcy petition's filing date. In re Kroh Bros. Dev. Co., 930 F.2d 648, 652 (8th Cir. 1991) (citations omitted).

Premium Foods delivered honey to Debtor in late June and early July 2004, and these deliveries occurred before the first preference payment on July 14, 2004. The Bankruptcy Court found these deliveries did not reduce Premium Foods' preference liability.

There are two methods for calculating the amount the preference liability is reduced for the new value defense. Williams v. Agama Sys. (In re Micro Innovations Corp.), 185 F.3d 329, 336 (5th Cir. 1999). The majority rule, known as the Garland Rule, allows a given extension of new value to be applied against any preceding preference. Id. (citing In re Thomas Garland, Inc., 19 B.R. 920 (Bankr. E.D. Mo. 1982)). The minority rule, known as the Leathers Rule, allows a given extension of new value to be applied only to the immediately preceding preference. Id. at 337 (citing Leathers v. Prime Leather Finishes Co., 40 B.R. 248 (D. Me. 1984)). The parties agree the Garland Rule applies in this case.

The Trustee submitted to the Bankruptcy Court a chart providing an analysis of Premium Foods' $177,360.00 credit against the judgment based upon the new value defense. The Bankruptcy Court stated in its Memorandum Opinion and Order that it "carefully consider[ed] potential new value and the Transfers, in their appropriate chronological order. Furthermore, the preference running sum column does not carry forward surplus new value." Premium Foods offered several charts on its new value defense, and the Bankruptcy Court found "that none of Premium's charts adequately address Premium's new value argument. Accordingly, Premium has offered this Court no evidence of the discount it is entitled to receive solely under the new value defense." Premium Foods contends the Bankruptcy Court erred in using the wrong calculation method to determine when the preferential transfers were made. The Court does not have a definite and firm conviction that the Bankruptcy Court mistakenly calculated the amount of credit Premium Foods received under 11 U.S.C. § 547(c)(4). Therefore, the Court finds the

Bankruptcy Court properly determined Premium Foods' credit offset of $177,360.00 based upon its new value defense.

## CONCLUSION

The Court has carefully considered the parties' arguments and the record. For good cause shown and for the reasons stated above, it is hereby

ORDERED the Bankruptcy Court's ruling is AFFIRMED.

IT IS SO ORDERED.


DATED: <u>December 20, 2013</u>

                                            /s/ Brian C. Wimes
                                            JUDGE BRIAN C. WIMES
                                            UNITED STATES DISTRICT COURT